UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARIA R.,[1]

                                 Plaintiff,         Case # 20-CV-6651-FPG

v.                                                       DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.
_____

## INTRODUCTION

Plaintiff Maria R. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her application for Supplemental Security Income ("SSI") under Title XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 12, 13. For the reasons that follow, the Commissioner's motion is DENIED, and Plaintiff's motion is GRANTED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion.

## BACKGROUND

On March 27, 2017, Plaintiff applied for SSI with the Social Security Administration ("the SSA"). Tr.[2] 65. She alleged disability since January 2010 due to chronic obstructive pulmonary disease ("COPD"), insomnia, major depression, type-two diabetes, and migraines. Tr. 65-66. In July 2019, Administrative Law Judge John P. Costello ("the ALJ") issued a decision finding that

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 11.

1

Plaintiff is not disabled. Tr. 15-27. In June 2020, the Appeals Council denied Plaintiff's request for review. Tr. 1-4. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At Step One, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to Step Two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant

restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to Step Three.

At Step Three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 416.920(e)-(f).

The ALJ then proceeds to Step Four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. *Id.* § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 416.960(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 27, 2017, her application date. Tr. 17. At step two, the ALJ found that Plaintiff had severe impairments of COPD, asthma, diabetes mellitus, depression, anxiety, and obesity. *Id.* At step three, the ALJ found that these impairments did not meet or medically equal any Listings impairment. Tr. 18.

Next, the ALJ determined that Plaintiff had the RFC to perform light work with additional limitations. Tr. 20. At step four, the ALJ found that Plaintiff had no past relevant work. Tr. 25. At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. 25-26. The ALJ therefore found that Plaintiff was not disabled. Tr. 26-27.

### II. Analysis

Plaintiff argues that remand is warranted because, among other things, the ALJ failed to appropriately evaluate Plaintiff's illiteracy at step five. *See* ECF No. 12-1 at 28-30. Because the Court agrees, it need not address Plaintiff's other arguments.

At step five, the Commissioner bears the burden of proving that a claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of her age, education, and work experience. *Rosa*, 168 F.3d at 77 (quotation marks omitted); *see also* 20 C.F.R. § 416.960(c). An ALJ may make the step five determination by eliciting testimony from a vocational expert ("VE"). *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014).

Social Security Ruling ("S.S.R.") 00-4p, which clarifies the SSA's standards for using a VE, provides that:

> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the [Dictionary of Occupational Titles ("DOT")]. When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the [ALJ]'s duty to fully develop the record, the [ALJ] will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE . . . evidence automatically "trumps" when there is a conflict. The [ALJ] must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information.

S.S.R. 00-4p, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000). This Ruling "place[s] an affirmative duty on the ALJ to identify and resolve any conflict between the [VE]'s testimony and the DOT before relying on such testimony." *Patti v. Colvin*, No. 13-CV-1123, 2015 WL 114046, at *6 (W.D.N.Y. Jan. 8, 2015) (citation omitted); *see also Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 93-94 (2d Cir. 2019) ("[T]he Ruling places the onus on the Commissioner, acting through her ALJs, to affirmatively identify any conflicts." (internal quotation marks and brackets omitted)). An ALJ's failure to reconcile "vocational expert testimony with apparent conflicts cannot represent substantial evidence." *Neumeister v. Comm'r of Soc. Sec.*, No. 19-CV-742, 2020 WL 3412469, at *3 (W.D.N.Y. June 22, 2020) (internal quotation marks omitted); *see also Sammie-Jo A.O. v. Comm'r of Soc. Sec.*, No. 20-CV-273, 2021 WL 2451044, at *3 (W.D.N.Y. June 16, 2021) (stating that "[w]here there is an unexplained and direct contradiction of the DOT, the expert's testimony does not constitute substantial evidence to support a finding that jobs are available.").

5

In this case, the ALJ found that Plaintiff was illiterate in English. Tr. 60; *see also* Tr. 41 (testimony of Plaintiff) (stating that she spoke "[v]ery little" English). Given that finding, Plaintiff argues there is an apparent conflict between the DOT and the vocational expert's testimony. The Court agrees.

The vocational expert testified that a person with Plaintiff's RFC could perform two representative occupations: garment sorter (222.687-014) and mail clerk (209.687-026). Tr. 60-62. Per the DOT, the occupation of garment sorter requires "Level 1" language skills, which means that the person can recognize the meaning of 2,500 words and read at a rate of 95-120 words per minute. Garment Sorter, *Dictionary of Occupational Titles*, DICOT 222.687-014, 1991 WL 672131 (1991). The occupation of mail clerk requires "Level 2" language skills, which means the person can, among other things, recognize 5,000-6,000 words and "[r]ead adventure stories and comic books." Mail Clerk, *Dictionary of Occupational Titles*, DICOT 209.687-026, 1991 WL 671813 (1991). Under the regulations, illiteracy "means the *inability* to read or write," including the inability to "read or write a simple message such as instructions or inventory lists." 20 C.F.R. § 416.964(b)(1) (emphasis added). Thus, at least ostensibly, Plaintiff's illiteracy precludes her from having the language skills necessary to perform either occupation under the DOT. *See Gonzalez-Cruz v. Comm'r of Soc. Sec.*, 294 F. Supp. 3d 164, 192 (W.D.N.Y. 2018) (collecting cases); *Cortes v. Colvin*, No. 13-CV-9098, 2015 WL 2166111, at *12 (S.D.N.Y. May 11, 2015) (noting that an illiterate individual "could not perform work requiring language level one").

At the hearing, the vocational expert overlooked this apparent discrepancy. Asked whether her conclusion—that Plaintiff could work as a garment sorter or mail clerk—was "consistent with the DOT," the vocational expert responded, "Yes[,] [a]nd my professional experiences." Tr. 62. The ALJ committed the same error. In his decision, the ALJ adopted the vocational expert's

6

testimony, stating that Plaintiff could perform the occupations of garment sorter and mail clerk. Tr. 26. He wrote, "Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the [DOT]." *Id.* As stated above, however, the vocational expert's testimony and the DOT conflicted. *See Gonzalez-Cruz*, 294 F. Supp. 3d at 192.

Faced with this conflict, the ALJ had an affirmative duty, pursuant to S.S.R. 00-4p, to "identify and resolve any conflict between the [VE]'s testimony and the DOT" before he could rely on the VE's testimony. *Patti*, 2015 WL 114046, at *6. The ALJ failed to discharge that duty. He failed to even recognize the conflict, let alone resolve it. *See* Tr. 26. Under these circumstances, it was error for the ALJ to rely on "the vocational expert's testimony at step five, and remand is appropriate for development of an adequate record addressing [Plaintiff's] inability to communicate in English and the effect of [her] limited English communications skills on [her] ability to perform the [] jobs identified as otherwise appropriate and available for [Plaintiff]." *Gonzalez-Cruz*, 294 F. Supp. 3d at 192; *see also Lockwood*, 914 F.3d at 94 (remand warranted where the "Commissioner's denial [of the claimant's application] was based on evidence that contained an apparent conflict with the [DOT's] authoritative guidance, and yet the Commissioner failed to take any steps to explore or resolve that conflict").

In opposition, the Commissioner argues that the ALJ reasonably relied on the VE's testimony, because the VE "specifically considered" Plaintiff's illiteracy and nonetheless concluded that "an individual with Plaintiff's education background and RFC could perform the above-noted representative jobs."[3]  ECF No. 13-1 at 31.  The Commissioner's argument

---

[3] The Commissioner also argues that the Grid rules and S.S.R. 20-01p militate against a finding of disability based on Plaintiff's illiteracy. ECF No. 13-1 at 31-32. As the Commissioner concedes, however, the Grid rules do not apply in this case, *see id.* at 31, and the ruling was not in effect at the time of the ALJ's decision. The effect, if any, S.S.R. 20-01p should have on Plaintiff's application is a matter that may be addressed on remand.

misinterprets the nature of Plaintiff's claim.  It is true, as the Commissioner contends, that an ALJ may rely on a vocational expert's reasoned testimony at step five even if it is inconsistent with the DOT.  *See Ramos v. Astrue*, No. 09-CV-90, 2010 WL 2854450, at *5 (W.D.N.Y. July 19, 2010) ("The ALJ is not required to rely on classifications in the DOT and may instead rely on a VE's testimony, even if it is inconsistent.").  The problem is that, *before doing so*, the ALJ must identify and resolve any apparent conflict between the expert's testimony and the DOT.  *See Lockwood*, 914 F.3d at 92-93.  Here, there was an apparent conflict between the literacy qualifications of garment sorters and mail clerks, as set forth in the DOT, and the vocational expert's conclusion that Plaintiff could perform those tasks notwithstanding her illiteracy.  *See* Tr. 60-62.  In that circumstance, S.S.R. 00-4p "required the Commissioner to probe this apparent conflict before relying on [the VE's] testimony." *Lockwood*, 914 F.3d at 92.  Merely asking the VE about the existence of a conflict, as the ALJ did here, is insufficient to satisfy that duty.  *See* Tr. 62; *see also Lockwood*, 914 F.3d at 93 ("[T]he Commissioner's duty to identify and resolve apparent conflicts between [the DOT] and vocational expert testimony . . . is not fulfilled simply by taking the vocational expert at his word that his testimony comports with the [DOT] when the record reveals an apparent conflict." (internal quotation marks and brackets omitted)).

The ALJ failed to acknowledge and resolve the conflict in his decision.  *See* Tr. 26.  Therefore, remand is required.

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 13) is DENIED, and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 12) is GRANTED. This matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: March 25, 2022
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York